ANNETTA M. STEVENS & others *vs.* JOHN MULLIGAN.

Hampshire.   September 15, 1896. — October 24, 1896.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Equity — Injunction — Trust — Revocation — Levy of Execution.*

A court of equity has jurisdiction to restrain by injunction a threatened levy of execution upon real estate which is not legally subject to such a levy.

A. conveyed land absolutely to B., who executed a declaration of trust, by the terms of which B. was to support A. during his life and bury him at his death, and, after A.'s death, to pay a certain part of the remaining property to C. and the balance to himself discharged from the trust, and in case of the death of either without issue before A.'s death, the survivor was to take the share of both.   A. and B. afterwards executed an instrument, by which they attempted to revoke the trust and to vest the legal title to the whole estate in B.   C. had no notice of, and did not assent to, such revocation.   B. subsequently mortgaged the land to a bank.   *Held,* that B. could not maintain a bill in equity to restrain a judgment creditor from levying an execution upon his equity of redemption in the land.

BILL IN EQUITY, filed in the Superior Court on April 16, 1896, to restrain the defendant from levying an execution upon the first named plaintiff's equity of redemption in certain land in Northampton.   Hearing before *Dewey*, J., who,

at the request of the parties, reported the case for the deter-
mination of this court.    The facts appear in the opinion.

*W. G. Bassett,* for the first named plaintiff.

*J. C. Hammond,* (*R. W. Irwin & H. P. Field* with him,) for
the defendant.

LATHROP, J.    The first named plaintiff seeks by this bill in
equity to restrain the defendant, a judgment creditor of hers,
from levying execution by sale of all her right in equity to
redeem certain real estate in Northampton, which had been
mortgaged by her.    In the Superior Court a preliminary in-
junction was granted.    Abbie A. Quigley and Lizzie E. Day
were, by an amendment, made parties plaintiff, and the case
was afterwards heard by a justice of that court, who found
certain facts, and reported the case for our determination.

The land in controversy was conveyed to Mrs. Stevens by her
father, William F. Quigley, by an absolute deed dated February
10, 1894.    As part of the same transaction, she executed on the
same day a declaration of trust.    Both of these instruments were
duly recorded on February 24, 1894.

By the declaration of trust, Mrs. Stevens, after reciting the
fact of the conveyance, acknowledged and declared that the
property was held by her upon the following trusts, namely:
1. To pay taxes and expenses of management.    2. To provide
a home, support, and maintenance for her father, so long as
he should live, and, upon his death, fit and proper burial.
3. " Upon his decease and the final adjustment of all matters
connected with said property, to pay and transfer the part and
parcel of said estate then remaining, if any, in the following
manner and shares, namely : To my niece, Abbie A. Quigley,
one seventh thereof, to my sister, Lizzie E. Day, one seventh
thereof, and the remaining five sevenths to myself, wholly dis-
charged from the trust, the issue of any of said parties who
shall decease before the said William F. Quigley shall take the
parent's share by right of representation.    And if any party
shall decease, leaving no issue living at the time of her death,
before the death of said William F. Quigley, the share of such
party shall vest in equal parts in the survivor."

The father of Mrs. Stevens is still living, and lives with her.

To enable her to render pecuniary aid to her husband, she and

her father, on March 10, 1894, executed an instrument, styled
" Release of Trust," which was duly recorded on March 28, 1894,
by which they attempted to discharge the trust.    This instru-
ment, after reciting the fact of the making of the conveyance
and of the declaration of trust, proceeded as follows: " Now
know ye, that I, the said William F. Quigley, in consideration
of one dollar and other good and valuable considerations to me
paid by the said Annetta M. Stevens, (the receipt whereof is
hereby acknowledged,) do now, for the purpose of more clearly
carrying out my purpose and intent in making said conveyance
and correcting an error and mistake therein, hereby testify and
declare that I do now cancel, annul, and revoke any and all
the uses, purposes, and trusts named by the said Annetta M.
Stevens in her said declaration contained, and declare that it
is my intent that said Annetta M. Stevens shall hold said
estates solely to her own proper use, freed and discharged from
any and all trusts : and I, Annetta M. Stevens, do testify and
declare that said trusts are now cancelled, annulled, and made
void for the purpose of correcting a mistake or error in said
original papers, and for the purpose of carrying into effect the
original intent of the parties hereto."

The judge has found that there was no error in the declara-
tion of trust; that Abbie A. Quigley was not notified thereof,
nor of its attempted revocation and discharge ; that Lizzie A.
Day was informed by Mrs. Stevens of the declaration of trust;
that it did not appear whether she knew of its attempted
revocation ; and that neither she nor Abbie A. has given any
assent in writing to said revocation.

After this Mrs. Stevens mortgaged the premises to the Salmon
Falls Bank.

On June 24, 1895, the defendant recovered judgment against
Mrs. Stevens for $336.07.    Execution issued thereon.    The seiz-
ure on execution was made on January 18, 1896 ; and the injunc-
tion issued on April 21, 1896.

1. There is no doubt of the jurisdiction of a court of equity
to restrain by injunction a threatened levy of execution upon
real estate which is not legally subject to such a levy, and thus
prevent a cloud upon title.    *O'Hare* v. *Downing*, 130 Mass. 16,
19, and cases cited.

2. While the instrument of March 10, 1894, could not affect the rights of Quigley and Day, we see no reason why it did not operate as a release to Mrs. Stevens by her father of all his rights under the declaration of trust. She then had the legal title to the whole estate, subject to the trusts in favor of Quigley and Day. On the death of her father, Quigley and Day would become entitled to one seventh of the estate each, if they should survive that event, and also to the other five sevenths, if Mrs. Stevens should die without issue before that event. The interest which Mrs. Stevens took was a vested interest, subject to be devested by her death before her father, leaving no issue. It was an interest which she could alienate, and which could be taken on execution against her, subject to these contingencies. *Blanchard* v. *Blanchard*, 1 Allen, 223. *Whipple* v. *Fairchild*, 139 Mass. 262. *Bancroft* v. *Fitch*, 164 Mass. 401. Pub. Sts. c. 172, § 1. *Bill dismissed.*